So your argument next in Case 09-291, Thompson v. North American Stainless. Mr. Schnapper. Mr. Chief Justice, and may it please the Court. Section 704A, Title VII, prohibits the use of third-party reprisals as a method of retaliating against a person who complained to the EEOC or otherwise opposed discrimination. The text of Section 704A doesn't limit the types of retaliation which are forbidden. The elements of the statute are unrelated to that. The first requirement is that the plaintiff show that discrimination occurred with regard to the individual who engaged in a protected activity. In a case like that, like this, that's shown by – would be shown by evidence that they singled out Ms. Regalado and Ms. Regalado's fiancé, they didn't go, go fire anybody else's fiancé, that was the basis on which this particular action was taken. Secondly, the plaintiff must show that the conduct was discrimination against the person who engaged in protected activity. That language is easily applicable to a situation where you single out, say, a family member or a fiancé. The purpose of that, the complaint can fairly be read to allege, was to punish the person who engaged in protected activity. There are a number of Federal statutes that use the word against in precisely this way. They say that actions cannot be taken to, say, against a family member of a sitting  the official. Scalia Is Ms. Regalado still engaged to this fellow? He's married. Huh? Is she still engaged to him? Yes. They're married. Oh, they're married. And they have a lovely 2-year-old daughter. Oh, good. Well, why didn't she bring the suit? I think, Your Honor, that your – this Court's Article III jurisprudence would have precluded her from getting any remedy. The – certainly most of the remedies that are needed here. She wouldn't have had Article III standing to win an award of back pay to her now husband. She couldn't have gotten award of damages to him. I think it's unlikely. But you've got reinstatement on the grounds that his continuing inability to be employed by the company is an ongoing hurt to her? Perhaps. It would depend on the circumstances. In this particular case, almost certainly not, because of just the course of subsequent events. It's – she subsequently left the company. At this point, they live nowhere near that now. Suppose an employer dismisses an employee on an impermissible ground, impermissible under Title VII, and it's a very valuable employee. Can the shareholder sue on the ground that the shareholder is now injured? Because the company is worth less, having lost this employee? Still under Title VII? I don't believe so, Your Honor. I don't believe so. The – but the situation here is different than that. Because you start with somebody who is – who is, unlike the shareholders, there's no Title VII violation as to them. Ginsburg, that Regalado is complaining of sex discrimination, and then she said, because I made a complaint, they retaliated against me. Shareholders are not in that position because there was no initial charge they had. No, it's the same hypothetical. We'll just say Regalado, all the same facts, except she's very valuable to the company. The company is now worth less. Shareholder sues. Right. I think the thrust of your question was, is, are the shareholders like Thompson? And I think the Thompson situation is quite different. He was the very target of the illegal act. The illegality occurs only by means of dismissing him. The question is whether he's aggrieved within the meaning of Title VII, right? That is the other. And your argument is that if there's injury in fact sufficient to satisfy Article III of the Constitution, then the person isn't aggrieved. The Court's decision in Traficante goes that far, and in practice, it has not proved a problem under Title VIII. That's generally been under this understanding here. But your – is it your argument that we have – that we should go that far? We should say if there's injury, we don't. We don't need to go that far. You do not need to go that far. Where do we draw the line? Well, I think the government has – I think as far as you need to go, which is not the same as saying that's as far as the law goes, is the standard articulated by the government. As in Macready, where the action against Thompson was the very method by which the law was violated, that that would satisfy the requirement of person aggrieved. Where does that come from? Where does that test come from? Runner, I don't – I think that's as far as you need to go in this case. I think the standard of aggrieved is broader than that, but the – as this has played out in the lower courts since Traficante, there's a wide range of different kinds of circumstances under which the Traficante rule has been invoked in Title VII cases. We're not asking you to address all of those. Alito, but I understand the argument. I don't really – it's not too helpful, at least to me, to say as far as we need to go in order to reverse. That's really not how the statute ought to be interpreted, I would say. What does it mean? What – now, I understand the argument that aggrieved means all the way to what's the – all that's necessary is what is necessary to satisfy the Constitution. And I understand that argument. It's a very broad argument. With a lot of implications. But if you – if that's not correct, then what is the correct test and where does it come from? Well, Your Honor, I think that there are two other limitations that would be applicable here, as indeed they would have been under Title VIII. The first one is proximate cause, which will cut off a lot of injuries down the road. And Title VII is adopted against the background of proximate cause rules, and I don't think – we don't contend that in using the word personally aggrieved, they meant – Congress meant to set those aside. Secondly, the – I think a fair reading of the word aggrieved is that it is – aggrieved is, both in ordinary English, frankly, broader and narrower than injured. It is broader – and that's, of course, not your concern – in the sense that it covers people who haven't been injured yet but might be injured in the future. But it also has a second element, which is that the action at issue involves some sort of a wrong. If someone deliberately knocks me down, I'm injured, I'm probably aggrieved, but not if I'm carrying a football in the middle of a football game. That's a legitimate thing to do. So I think that there has to be a wrong, and the wrong has to be the basis of the plaintiff's objection. You could have a situation where the plaintiff really didn't care one way or another why that harm had happened. It was – but in this case, that's precisely why Thompson complains. He's not suggesting that he would be wronged if he were ever fired at all. He is aggrieved because he was fired for a reason that was an improper reason, and we think those are – those are limiting principles. Ginsburg, what do you do with the argument that says there's a middle step? You can – you have the sex discrimination complainant, and then you have Thompson, who is aggrieved in the sense that he was hurt, he was injured, but they say there's no cause of action, there's no statutory cause of action for Thompson. Well, the – we think that's just clearly wrong. The statute provides a cause of action. If I might go back to how that came up in the court of appeals. The court of appeals appears to have assumed that third-party reprisals are unlawful. It's not entirely clear. And then in footnote 1, the court of appeals said that Thompson was aggrieved. Notwithstanding that, they then went on to say that there's no cause of action in the statute. They said in Section 704a. That really doesn't make any sense. The statute provides an express cause of action that says that individual – certain individuals, if the requirements are met, can bring lawsuits. So the question is, as Justice Alito put it and was put before, which is whether the plaintiff is aggrieved. But if he's aggrieved, he's clearly got a cause of action. Alito, suppose Thompson were not Regalado's fiancee at the time. Suppose they were just good friends, and everything else happened. And he alleged that he was fired in retaliation for her engaging in protective conduct. The way the company wanted to get at her was by firing her friend. Would that be enough? Well, the plaintiff would have to prove two things. First of all, the plaintiff would have to prove that that was indeed the company's motive for picking him to fire him. Secondly, under this Court's decision in Burlington, Northern, the plaintiff would have to show that this was a retaliatory action sufficiently serious that it was – it would likely persuade a reasonable employee in Regalado's position to dissuade her from complaining. And that's why we've agreed with the Respondent's contention that they're entitled to an evidentiary determination about whether that standard was met here. So that's an important limiting principle.  Alito, I don't think that the Burlington, Northern standard translate into the situation in which there is some sort of relationship between the person who engaged in the protective conduct and the person who suffers the adverse employment action. That's what's troubling to me about the theory, where it's a fiancé, it's – that's a relatively strong case, but I can imagine a whole spectrum of cases in which there is a lesser relationship between those two persons, and it wouldn't – if – unless there's a clear line there someplace, this theory is rather troubling. Can you help – can you help provide where the clear line is? Does it go to – does it include simply a good friend? Does it include somebody who just has lunch in the cafeteria every day with the person who engaged in the protective conduct, somebody who once dated the person who engaged in the protective conduct? Are these all questions that have to go to a jury? They wouldn't all have to go to a jury. I mean, the problem as you cast it is that the standard in Burlington, Northern, no offense, isn't a bright line. It is the standard which it is. And the same question could arise about other methods of retaliation. What about – what about cutting some out of 5 meetings or 10 meetings? That same problem exists under Burlington, Northern no matter what. Breyer, why can't they get – the first question you're back to is just a confusion in my mind. Why couldn't she bring this suit and she says, I was discriminated against because they did A, B, C, D to him. And the remedy is cure the way in which I was discriminated against. And to cure that way, you would have to make the man whole in respect to those elements that were discriminating against her. You give him back pay, you restore him, you do everything you'd normally have to do, because otherwise she is suffering the kind of injury, though it was to him, that amounts to discrimination for opposing a practice. What's wrong with that theory? I think that that kind of remedy would pose very serious problems under Article III. Why? Why? Because the money isn't going to her. So what? She's hurt because – suppose it was a child that they – what they – or suppose they robbed – they robbed the judge's wife in order to get him to do something. And that's a crime, and suppose there's a civil statute. The judge says the way you cure what you did to get me to do something is you make me whole. And in that instance, it requires making her whole. What's the Article III problem? Well, anyway, I don't know that this is crucial, but I'm just saying. I think it is of some importance here. I mean, it – the ordinarily Article III would bar me from suing for an award of money to be paid to somebody else. But that's because the award of money to be paid for somebody else, their absence of money didn't hurt you. But where there are, for example, if you're a trustee, you certainly could sue to get the beneficiary put back. There are dozens of cases where you can sue to get somebody else paid back money. And why isn't this one of them? But anyway, I'm not – don't want to pursue it beyond a quick answer because there are other things in this case. Well, as I say, I think Article III would be a major obstacle there. But I understood your brief, and certainly the government's brief, to take a very expansive view of what type of retaliation would give rise to a cause of action by the directly harmed employee. Now you seem to be suggesting that that employee would not have Article III standing to bring an action. I think we've got a situation here in which this violates the rights of Regalado, but Regalado's ability to herself bring a lawsuit and get a remedy is limited. And that – that's the problem. You're not taking the position that she could not have sued for retaliation. It would be awkward because the – he's – it's his injury that requires compensation. But are you saying that she could not have brought a retaliation suit? It's possible she could bring a suit. The question would be whether she had Article III standing to seek the remedy that she was then seeking, which would often be a problem. Ginsburg-Miller That would be, because your time is running. The Americans with Disabilities Act has an explicit provision that allows suits by adversely affected close relatives. You are essentially asking us to read that provision, which is stated expressly in the ADA. If I might respond to that briefly. You're referring to section 12112b4 of the ADA. That is a provision directed at a very different problem, which is not associations between employees. It's directed at employers who might refuse to hire a worker because, for example, he had or she had a child with a disability. The EEOC's commentaries on the regs about this explain it. It is not concerned with employee relations. It's concerned with discrimination against a worker, a prospective worker, typically because they have a family member who has a disability and the employer has preconceptions about whether there will be good workers based on that. Sotomayor But the Fair Housing Act has a definition of injury that would include Mr. Thompson, and that's not in this Act, that express language. That's correct, Your Honor. That statute was adopted somewhat later. There are large numbers of statutes that have a general language like person aggrieved. But I think that in the case of the Housing Act, that language fairly describes the ordinary English meaning of aggrieved. Sometimes Congress does that. There are other definitions in the Fair Housing Act like that, like the definition of dwelling. It doesn't mean dwelling means something else everywhere else in the U.S. Code. But Congress in any instance decided to spell out what everyone, I think, would have understood the word to have meant. Thank you, counsel. Ms. Kruger. Mr. Chief Justice, and one that may please the Court, when an employer fires an employee as a means of retaliating against a relative or close associate who's filed an EEOC charge, the employee who has been fired is entitled under Title VII to go to court and seek appropriate remedies, even if he hasn't himself engaged in protected activity. Could I ask you this? Suppose you put yourself in the shoes of an employer, and you think you want to take an adverse employment action against employee A. You think you have good grounds for doing that. But you want to know, before you do it, you want to know whether you're potentially opening yourself up to a retaliation claim. Now, what is the employer supposed to do then? You say, well, let's we need to survey everybody who is engaged in protected conduct, and now we need to see whether this person who we're thinking of taking the adverse employment action against has a quote, unquote, close relationship with any of those people. So what do you do? You call everybody in from the company and you say, now, is, you know, are these people dating? Did they once date? Are they good friends? What are you supposed to do? O'Connell. Justice Alito, we're not arguing for a test that would create a kind of protection for a so-called right of association under Title VII. It's not the case that so long as somebody is associated with somebody who's complained about discrimination, they would be automatically protected under the test that we're advocating. The reason the relationship is important in this case is because it tends to render plausible the argument that there's a causal connection between the adverse action visited on the compromise case. Alito I understand that. I do understand that. But I wish you to – I'd like you to answer my question. Does the employer have to keep a journal on the intimate or casual relationships between all of its employees so that it knows what it's opening itself up to when it wants to take an action against somebody? It's actually quite to the contrary. I think if the employer doesn't know about the relationship, any allegation like the allegation that we have in this case simply isn't going to be plausible. It's not going to be a plausible contention that there's a relationship between one employee's protected activity and an adverse action visited on the plaintiff. So do you agree? Well, but you say, but it won't be because of the degree of connection between the retaliated against employee and the means of retaliating. I understood your brief. I'm just looking at page 6. The limitation you propose is someone – someone close to him. The anti-retaliation provision prohibits an employer from firing an employee because someone close to him filed an EEOC complaint. And I guess I have the same concern that we've been discussing for a little while. How are we supposed to tell, or how is an employer supposed to tell whether somebody is close enough or not? Well, there's – I don't think that there's any reason for the Court to try to fashion a hard-and-fast rule that identifies some relationships that are close enough and others that aren't. The question in every case is the question that's posed by this Court's standard in Burlington Northern. Was this an action that a reasonable employee would have considered materially adverse? Would it have been deferred? But Burlington Northern, of course, is quite different because you're just dealing with the obvious plaintiff in that case. Your concern is confined to a particular person. In this hypothetical, it's an unlimited universe that you don't have any reason to know where it ends. Well, it's certainly going to be important whenever a plaintiff brings a suit like this, both to establish that the employer knew of the relationship and the relationship was one that is of sufficient closeness, that a reasonable employee might be deterred from making or supporting a charge of discrimination. Sotomayor, under your theory, let's assume, slightly different, that they're just a discriminated person, has spoken about them in a favorable light, or has tried to defend them. Would that person be protected from being fired if the intent was to retaliate against the person complaining of discrimination by getting rid of their friend who's supporting them? In that scenario, I think that that person would have a cause of action, but for a different reason. Under this Court's decision in Crawford, that person would probably be considered to be a person who had opposed the discrimination and, for that reason, would themselves have engaged in the prosecution. Sotomayor, so an opposer is anyone who assists? That's our understanding of what this Court held in Crawford. But let's assume they did it just in private, but the employer knew it. They overheard a conversation between the close friend and the employee saying, I really am in support of you, I know you've been treated unfairly. I like you, I like you working here. Would that person be close to them? I think that, again, I think it's a question that sort of turns on whether a jury would find the reasonable employee in the position of the person who had engaged in protected activity would be deterred from making or supporting a charge of discrimination if they knew the consequence was that their best friend would be fired. I don't want to have to go before a jury as an employer all the time. I want a safe harbor. I don't even want to mess with people that might be buying a lawsuit. And you're telling me, well, you know, I can't help you. You have to go before a jury, say if this person was close enough. Why can't we say members of family and fiancées? Would that be a nice rule? Well, I think that it would be an essentially arbitrary rule. I know. At the end of the day, I mean, the question is just the question that the Court assigned under Burlington Northern. It's a question that turns on the specific facts and context of a specific case. And I think to the extent that the Court's said it, it spreads much further than Burlington Northern. Burlington Northern, at least you know who it is you have to be careful with, the person who's, you know, who's made a complaint. But what you're proposing, my goodness, I don't know who it is I have to be careful with. Well, an employer always is going to have to be careful to some degree not to visit harm on an employee for retaliatory reasons. But you're a reasonable person. What would you say is the degree of closeness that's required? I don't think that there's any way to fashion a hard and fast rule. The fact of the matter is that most of the cases that have arisen that have raised third-party retaliation arguments, which are indeed cognizable under a number of employment statutes, and I don't think Respondent disputes that they are rightly so, largely concern relationships like relationship between parent and child, between husband and wife. In one case under the Occupational Safety and Health Act, it's involved a relationship between very good friends in the workplace, whereas if there's a D.C. Court of Appeals decision that holds that a merely professional relationship that doesn't exhibit that degree of personal affection isn't sufficiently close. But very good friends is enough? I think that a reasonable employee who knows that the consequence of making or supporting a charge of discrimination is going to be that their best friend at work is going to be fired may be deterred from engaging in protected activity. And in your view, could Regalado have brought this suit, or brought a suit? Yes, Justice Kennedy. We do think that Regalado could have brought a suit in her own right, because she, too, is a person aggrieved within the meaning of the statute. Well, if that is so, why doesn't that vindicate the purposes of the Act? Well, for two reasons, Justice Kennedy. First of all, Regalado here didn't sue, just like most people in her position didn't sue, because mostly people who are charged with the enforcement of Title VII under as the private attorney generals under the statutory scheme will assume that the person who lost their job rather than the person who was sued. Well, but I assume that part of the thrust of your argument is that this was designed to hurt this Regalado, that she was hurt, that this was injurious. Then you say, oh, well, it's not important enough for her to sue. So somebody that's more remote can sue. That's an odd rule. Well, I think in that situation, she certainly she might sue, but she might also assume that it ought to be her fiancé, whose job was actually lost, who ought to carry the mantle. Well, can't they talk about that? I mean, it's not like you're dealing with strangers. That's the whole point. It's someone close to them. On the one hand, you're saying, well, you only have to worry about people really close, and then your response to this line of questioning is, well, the other person might not sue. We're not going to sit around and say, you sue. No, you sue. Well, the fact that they were close at the time of the retaliatory act doesn't necessarily mean that they might still be close at the time it's to decide whether or not to press charges. The point that you were first making, I thought, was these are laypeople. They don't have a lawyer. They would naturally think that the person who was hurt would be the one to sue. That's exactly right, Justice Ginsburg. I think the other one is the one that's not. Why is that a problem? You're dealing with people who are close. They assume the person who was hurt, the person retaliated against, would sue. Well, why don't they? You said that person has a valid suit. They're laypeople. They don't know about Article III. Well, that is certainly one point. But I think even if they were perfectly informed, and the rule that this Court announced was one that put Regalado in the driver's seat entirely with respect to whether or not to pursue the cause of action under Title VII, there would still be a problem with respect to whether or not she could seek full relief, the relief that's necessary to make a call. Alito, if somebody in Thompson's position filed a charge with the EEOC, couldn't the EEOC tell him you're the wrong person to sue? It conceivably could, but that is not the case. But the EEOC thinks he's the right person. Well, EEOC certainly does think that he's the right person. If this Court were to say that the EEOC is wrong. But if the rule is that the rule is otherwise, why couldn't they provide advice? The EEOC is ordinarily not in the business of advising people who file charges with respect to charges that other people might file for confidentiality reasons, among other reasons. Thank you, Ms. Kruger. Ms. Lathrow. Mr. Chief Justice, and may it please the Court, Eric Thompson does not allege that he was discriminated against. The Title VII is a discrimination statute. The only person who alleges that they were – that was – Do you, if Regalado had sued and said, assume the fact, I know that you claim it didn't happen, they fired my fiancée to retaliate against me, do you agree with your adversary that she wouldn't have Article III standing to seek reinstatement or back pay for her fiancée? I don't – I do think she could seek reinstatement through the general equitable relief of the court. In terms of back pay, I don't see why she couldn't recover that for him. But in terms of his coming back to work, he could seek reinstatement. I would like to see that case next. I'm sorry? And see what position you take the next time. Are you willing to commit your company to that position today? I won't do that to you. Okay. Thank you, Your Honor. No one is seeking damages for Ms. Regalado in this case. Eric Thompson is here to use her rights to recover for her alleged discrimination based upon her conduct. Yeah, but if, you know, if you concede that she could have sued, then what's the big deal? Then we still have the same problem, that the employer doesn't know whom he has to treat with kid gloves. What's the difference whether when the law comes down on him, it's she who brings the suit or her fiancé? He's worried about the suit. He still doesn't know whom he has to be careful with. I agree that she can bring the cause of action based upon Burlington and the way that the language is written in Burlington. I think it's very, very broad. And so she has to be ---- Burlington says she has to prove injury. That retaliation without injury is not actionable. So if she can't bring the cause of action, then she can't bring the cause of action. So that's your only point, not that it's going to be very difficult for employers to figure out who can be protected and who can't. You abandon that issue. No. I think if Regalado has the right to bring a cause of action, it is going to be very difficult. But I think that the way that Burlington reads now, and that is whether someone would be dissuaded, if that is harm to her, then she could bring the cause of action. What's difficult about applying the Burlington standard is you could have someone who is dissuaded from filing a claim, but may not be harmed. For example, if an employer announced a proposition that it was going to fire an employee at random whenever someone filed an EEOC charge, I might not file a charge, because I wouldn't want someone, even someone who I didn't know, to be terminated. But I wouldn't be injured in that scenario. So you say an employer could adopt that policy? I'm sorry? Are you saying an employer could adopt that policy? No, I'm not. Because the person who is discriminated against could say no. If an employer says, now, if anybody makes a discrimination claim, we're going to fire two other employees just to show you that we run an efficient corporation around here, you say that that is the ‑‑ that's proper or improper? It's improper. Because the person who is discriminated against would have the right to sue. What the title of this case is ‑‑ But who is the person who is discriminated against in the hypothetical? The person who ‑‑ the person who filed the EEOC charge. What makes this case a little cloudy ‑‑ But the persons ‑‑ the two people in the hypothetical that are fired can't sue. They cannot. Not under the discrimination provision of Title VII, because they were not discriminated against based upon their conduct. It wasn't anything that they did. And that's what Burlington Northern says, that the anti-retaliation provision of Title VII seeks to prevent harm to individuals based upon what they do, based upon their conduct. Those two hypotheticals. Scalia. Why should ‑‑ in this World War II Nazi scenario, why would the woman who caused the random firing, why would she bring a lawsuit if these people are really nothing to her? She just has a guilt of conscience or something? I don't see why she would bring the lawsuit. If it was her fiancé, maybe, but ‑‑ She may not, but the EEOC ‑‑ She might not even like the people who were fired. In which case she wouldn't have been injured, so she would have no claim. And if you think about it, if she was not discriminated against, then the other people could not bring a claim for discrimination based upon her. What makes this case a little cloudy is that Eric Thompson is an employee as well. But he doesn't bring this case as an employee. You could very well have Eric Thompson as a spouse who is not employed. So for example, if Mr. Thompson had been just a ‑‑ let's make him a spouse, an even closer relationship than a fiancé, and suppose that he, his job, he ran an animal shelter in Carrollton, Kentucky, and it was a benevolent organization, but his only source of revenue was a generous gift from North American Stainless at Christmastime. And in 2003, after Regalado filed her claim with the EEOC, filed her charge, North American Stainless said, I'm not going to give money this year to the animal shelter, to Mr. Thompson, and I'm not going to do it because of Regalado, who is our employee, because she filed a charge of discrimination. I'm not going to do anything to help her. I'm not going to do anything to help him. In that case, under Mr. Schnapper's standard, that any person aggrieved can bring a claim. That person who is not even an employee, because they have some kind of injury, could bring a claim. Roberts. Well, but his point was that aggrieved includes not only injury, but wrongfulness. It may not be very, I don't know, nice, but there is nothing wrongful about North American Stainless deciding it's not going to fund an animal shelter because of some other reason. But it's treating Regalado with discrimination. It is treating her differently than it might treat another employee because she brought the cause of action. That would be discrimination against Regalado because it's treating her differently, but under their terms. Breyer. You couldn't win on that under Burlington. I mean, I think that there are three separate issues here that have to be kept straight. No one can win in court unless they show there was a human being, in this case the harm, serious harm. And serious harm is defined as materially adverse action which might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. So unless she suffered that kind of serious harm, nobody wins. Then the next question is, suppose in the course of that somebody else was hurt, and the person aggrieved provision suggests because of the history of the word aggrieved that more than just she can bring the lawsuit. That's our first question. And then our third question is, if the second question is yes, why can't the whole world do it? At least the barber who doesn't get the haircut anymore because the person fired doesn't have any money, or the landlord who can't get his rent, or the, you know, we can go on indefinitely. Okay? So why don't we get to the second question? The second question is, the word aggrieved has a history. I think it comes out of, what's the case? I think it comes out of FCC v. Sanders Brothers, which is a 1940 case, which said that sometimes where there's a statute using the word person aggrieved, that that means that a person can bring a lawsuit even though that person does not suffer injury of the type that the statute was meant to prevent against. That was picked up by the APA. It says person aggrieved. So we have a statute that says person aggrieved. Maybe it means it in a different sense, or maybe it means it in the APA sense, Sanders Brothers sense, which means in principle, this plaintiff can sue. You can argue against that if you want, but I mean, that's where I'm starting from. And then we can have the third part, which is, is there a way of limiting this? You don't have to. I'm just a question. It's a rather long question. Scalia, and you don't even have to agree with his description of what Sanders Brothers and the APA say. No, you don't, but it would be pretty hard to do that, because it's black and white here. Scalia, isn't there a doctrine of the scope of persons protected under the under a particular statute? Absolutely, Your Honor. Doesn't the word person aggrieved bring that whole lore along with it? I believe it does, Your Honor. Ginsburg, can we go back to basics? First, you agree that it is unlawful to retaliate against a person who filed a complaint under Title VII by dismissing a close relative. It is an unlawful employment practice, is it not? I believe it could meet the standard under Burlington, yes, Your Honor. Do you want to get back to Justice Breyer's question? I don't think you had a chance to respond to it. Yes, Your Honor. Thank you. Justice Breyer, I believe your question was the scope and what does this term aggrieved mean. And in Sanders' case, the Court said that this term aggrieved means something broad, and it is intended to bring a lot of people in. But that case was interpreting the APA, which has specific language.  The APA says a person suffering a legal wrong because of an agency action or adversely affected or aggrieved by agency action within a meeting of a relevant statute is entitled to judicial review, and that's much broader than what we have in this case. So we have been looking at whether prudential standing rules apply, and we know that Congress legislates against that prudential standing. I'm not sure it's broader. Why do you say it's broader? It says adversely affected or aggrieved within the meeting of the relevant statute. And it's that language that says, well, the statute was only meant to protect this group of people, and the fact that somebody else was incidentally harmed would not be covered. I don't know why you say that's broader. If anything, it's narrower than what we have here. We just say aggrieved. It doesn't say within the meeting of a relevant statute. You want us to read that into it? Yes. I believe it should be read into Title VII, because that's the term aggrieved. If someone, if my husband calls and says, oh, my gosh, we've been involved in a car accident, I don't say, honey, are you aggrieved? I say, honey, are you injured? And that's exactly the definition of aggrieved in the Fair Housing Act. So Congress recognized just four years later after Title VII was adopted, when it enacted the Fair Housing Act, and it defined aggrieved and said aggrieved means or includes any person who claims to have been injured. And that's really the case. Ginsburg-Miller This is not an altogether novel question, because it has come up under some other statutes. You are suggesting that this is carrying a person aggrieved to new heights, but we have both the NLRB and we have OSHA. And both of those agencies have said that to take adverse action against a close relative is an unfair employment practice. And they've done that for some time, have they not? Yes, Your Honor. And again, we're not saying that discriminating against an employee and taking some kind of action against someone that they loved is not an unlawful employment action. It can be. That's not the position that North American Stainless is taking. The question is, is the person who is not discriminated against, the person who was injured by the action, can they bring the cause of action? In Title VII, Burlington makes clear that the interest to be protected with the anti-retaliation provision, and that's what we're talking about. Breyer, that's why this is what Sanders Brothers did, is the interest to be protected against had nothing to do with protecting competitors from competition. The Court says that. And it says, but here is a competitor trying to protect himself from competition. Can he bring a suit? Well, normally not. But Congress used the word person aggrieved or adversely affected, and therefore they can. Now, that's the precedent that's harmful to you. I'm not certain. What about the third part? I have a suggestion, and I'd like your response, because I'm just playing with a thought. The way to limit this is to say that where a person is being used, a person B is hurt because, in order to retaliate against person A, okay? That that is a person aggrieved, where person B is hurt, the injury, the injury to B, not to A, is the means of hurting A. But where it is a consequence of hurting A, that doesn't fall within the statute. That gets rid of the bowling alley, it gets rid of the landlord, it gets rid of the shareholder, it gets rid of all the people who are not the person retaliated against, but they suffer injury because he was retaliated against. It keeps the people who are being used as a means. They can bring the lawsuit. And I'm sorry, and your question is, do I agree? In fact, you set in motion hurting Mrs. Smith, the child, the wife, even the coworker, though that would be hard to get past Burlington. If you do that in order to hurt A to retaliate against A, B can bring the suit. But if B is a person who is injured only because you retaliated A, but really wasn't  But, Your Honor, respectfully, there's no basis in the statute to adopt that rule. That is the problem with my theory. I'm glad I think it is. But there are, I do get, I think that it isn't so hard to find in some of the sources that Justice Ginsburg mentioned and others, instances where the only kinds of suits that have been allowed are where it was like a family member or was being used as a means. And there never have been cases where they allowed somebody who was just suffering consequent injury. So it's quite possible I can be borne out, though I think your criticism is a pretty good one. If we look at the kinds of cases, for example, the Trafficante case and the other cases under the APA, where Congress has used this broad language or has interpreted the term agreed broadly, those cases are, the nature of those cases, such as with Bennett v. Speer, the Environmental Species Act, or the Blue Shield of Virginia case, which was a Sherman Act case. The injury, or the act, the violation in those cases had the potential to inflict harm on a large group of people. So that under Trafficante, there were over 8,000 people who lived in the housing complex. Under Bennett v. Speer, with the Environmental Species Act, there was more than one person who was adversely affected, or potentially was adversely affected. In Blue Cross- I don't see where you're going. The employer has to fire three fiancees or a larger number of- No, my point is, is that if we're looking at trying to compare Title VII and whether or not we're going to impose some prudential limitations on the aggrieved language, those statutes are different than the statute that we have. You know, I don't know what aggrieved means. I don't think anybody does. Why shouldn't we be guided by the EEOC, which has responsibility for implementing this statute? And they've come up with their theory of what it means, and we usually do accede to a reasonable theory proposed by the implementing agency. Why shouldn't we do that? Your Honor, this is not a situation like Kaliweke, where the court is trying to determine something about a procedure within the EEOC, and that is, what does it mean for a charge, because you need some kind of special expertise. Here, the court is the expert on interpreting, and Thompson even disagrees with the EEOC. The EEOC would say Regalado and Thompson could bring the claim, but Thompson disagrees with that. So it's hard for Thompson to come and say, well, let's do what the EEOC says. When he disagrees with it himself. Ginsburg. But it's not 100 percent clear he does. He thought there might be an Article III impediment. But in your brief, I think you suggested that the EEOC doesn't get a whole lot of deference. But the other agencies that I mentioned, where there is this claim that can be brought forth by a close relative, the NLRB gets a lot of deference, the Department of Labor, when we're dealing with occupational safety and health administration or the mine safety, those agencies get a fair degree of deference, and they come to the same conclusion. I agree with that, Your Honor. And in this, this, I don't know, but I believe this to be true, that, for example, with the NLRB and with OSHA, they have their own administrative agencies where there would be hearings within those agencies, versus with Title VII. The EEOC does not, they're not a determiner. Ginsburg. But this is an interpretation of the substantive meaning of the statute. Yes, Your Honor. It doesn't have to do with the evidence in this particular hearing. Can a person who is a close relative sue on the grounds that he was injured, deliberately so, in order to retaliate against his spouse or his fiancée? Yes, Your Honor. I don't know the distinction between relying on those agencies versus the EEOC. But I do know that in the Burlington court, this court noted that the EEOC compliance manual, and that's what we're talking about is a compliance manual. We're not talking about a regulation. We're not talking about something else, but a compliance manual. And so in your hypothetical, I don't know if we're talking about a compliance manual from the NLRB or OSHA, but this is a compliance manual. And in Burlington, this court noted that there were inconsistencies regarding the anti-retaliation within the compliance manual as to what an adverse action meant, or what would constitute an adverse action. What's the function of the compliance manual? What does it do? Does it say, we'll leave you alone if you do this? I don't know. But they have to leave him alone. There's really nothing the EEOC can do to somebody, right, except, what, can the EEOC take him to court? Yes, they can. Well, so can the Justice Department, but we don't defer, thank goodness, to the Justice Department's interpretation of the criminal law. Do we? No. Your Honor, the concerns from the employment side in this case are substantial. Under Thompson's theory of the case, anyone who is injured, or what he says is aggrieved, anyone who receives injury, becomes a protected party. It's not just bringing the lawsuit, but it's the protected party. He's not even a silent opposer in this case. There were concerns in Crawford about the silent opposer and how do we know who they are. He says it's based solely upon his relationship. He is engaged in no protected conduct. The silent opposer, assuming they can have, bring a claim, at least engaged in some conduct. But Thompson has no protection under this statute. He could have very easily gotten the protection. In our joint appendix, we've submitted the brief that Eric, or the memo that Eric submitted, shortly before his terminated, he complains in that memo about his compensation. And this is on page 22 and 23 of the joint appendix. He says- 22 and 23 of? The joint appendix. Okay. He says in this memo, I am disappointed in compensation this year. At the time that he submitted this memo to his supervisor, his fiance had a complaint or a charge with the EEOC pending. If he had only come forward in this memo, Congress says you would have gotten protection. If he had come forward and said, and by the way, I think the way you treat my wife is discriminatory, he would have gotten protection. The means by which employees get protection under the statute are not very difficult. All they have to do is to come forward and oppose. Thompson clearly had an avenue and a means to do that because he was taking action on his own behalf to complain. So Thompson wants to bring a claim under, for Regalado, but he couldn't at that time come forward and step up to the plate and say to the employer, hey, I have a problem with this. But yet he wants to come into court and to claim his rights, or to claim her rights, as a basis to bring this suit. According to the EEOC statistics, in 1992, when data first began being collected, 14.5 percent of charges filed with the EEOC were retaliation claims. By 2009, that had risen by 31 percent. In the Chamber's brief on page 2, they submit or recite to a study that was published in 1994, saying that the average cost to defend an employment litigation in 1994, when the study was published, was $120,000. In this case, what Thompson would propose is to give protective party to a wide range of people. And with respect to the government's position today, at the Sixth Circuit Court of Appeals, they advocated that there would be no limitation, that everyone would get the protection. That's a broad – that is a lot of protection for people. And I can tell you that employers who are faced with someone in a protective party, they are – employers are reluctant to take adverse decisions against them. They're reluctant to implement discipline. They will postpone implementing that decision, because they know that at some point they're going to have to establish a legitimate nondiscriminatory reason. When we – when we point out – when we point this out in our arguments, the response by Eric Thompson as to who gets the protection, it's in his footnote on page 4 of his reply. He says that the identity of individuals who might have a claim is a function of the employer's own intent. So in other words, in order to determine whether someone has protection, you have to look at the employer's intent. So there are no protective parties anymore until the employer can establish that they had no intent. Or the other way, everyone is a protective party until the employer can show that he had no intent. So what that means at the trial is that there will never be … Breyer. I'm not sure why the employer's intent comes into this. A is the person who is being retaliated against. And the issue would be, did the employer take such action against B as the A would think, quite reasonably, he'd have to reasonably think, that the action that the employer took was retaliation, was meant to be whatever those words were, was – was – might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. But the position that's set forward by Thompson is you determine whether someone is a protective party by looking at the intent of the employer. Well, you'd have to show he had a retaliatory intent, that's true. But that's true however he retaliates. That's true at trial, though, after a plaintiff gets past his initial burden of proof. And in this case, a plaintiff is going to be able to establish their burden of proof solely by saying that they were a protective party and there was intent on the other side. That is going to shift the burden to the employer at the outset of the case to prove that there was no retaliation, that there was no intent. Your Honor, in conclusion, the Sixth Circuit Court of Appeals was correct. The Sixth Circuit determined that Eric Thompson, who was not discriminated against, had no protection under the statute. This Court clearly held in Burlington that the anti-retaliation provision of Title VII is designed to protect employees based upon what they do, based upon their conduct. In this case, Eric Thompson engaged in none of that behavior. He had no conduct. He did not come forward on behalf of anyone. Yet he is here asking for remedies, remedies that really should belong to Regalado. There's no reason that Regalado could not have brought this case. There – if the concern is that employers are going to discriminate against employees, the response to that is employers will still be held liable and can still be held liable, and that is by the person who was discriminated against from bringing the suit. We ask that the Sixth Circuit Court of Appeals' decision be affirmed. Roberts Thank you, counsel. Mr. Schnapper, you have three minutes remaining. Schnapper Thank you, Your Honor. Just a couple of quick points. Ginsburg Mr. Schnapper, in the points that you are making, would you have an answer to this point that was made about the burden of proof? I mean, the argument was that you wouldn't have McDonnell Douglas anymore and you wouldn't know how to proceed on this third-party claim. Schnapper Your Honor, McDonnell Douglas, the particular formula in McDonnell Douglas was for hiring cases. The courts have readily adapted it to other kinds of cases where the – depending on the nature of the claim, the plaintiff produces some minimal amount of information and the employer is required to articulate a reason. But I don't think it would be a problem here. Getting back to the question that was asked at the consent hearing. Sotomayor I'm not sure why not. Schnapper What? Sotomayor I'm not sure why not. The plaintiff comes in and says, I engaged in protected activity. Schnapper Although, probably the other person did. Sotomayor The other person did. They retaliated against me. How do you – what – then the employer always has the burden to come forth and give an explanation as to why? What would be – the prima facie case generally is they've treated me differently than similarly situated people. I complained at a time close to my firing. There's a whole series of prima facie elements. Schnapper There would have to be some evidence that could plausibly give rise to an inference of motive. Even if I were complaining that I was retaliated against, I can't just come in and say I engaged in protected activity and was fired. I would need more than that. So you would need that additional amount here. Plus, you'd also have to have some evidence to give rise to an inference that this third party was selected as a victim. So it wouldn't – you could adapt it. But to get back to what was asked earlier, there's no question the burden of proof is on the plaintiff at all times to establish motive. And as we get particularly far afield from a family member or someone closely associated with the plaintiff, it is going to be difficult to establish, to meet that burden. In these cases. Roberts What happens in the animal shelter hypothetical that your friend proposed? You know, the North American Stainless Funds the animal shelter of the – where the wife works, and they cut off their funding as a means, presumably, of funding. Schnapper I don't – I don't – I think this Court's decision in Burlington Northern makes it clear that the plaintiff wouldn't have to be an employee. In that case, one of the questions was, could you retaliate against an FBI agent by not protecting his wife from being murdered? I think that would be a pretty good way to keep people from complaining. But I think the Burlington Northern limitation would, you know, would have some traction in these cases. Animal shelter seems fine. But the burden of proof is there as the relationship becomes more attenuated once you get past family members. I think it's going to be difficult, even at summary judgment, for these cases to survive. And I think it's going to be difficult to get past family members. Thank you. Thank you, counsel. The case is submitted.